**LIBERTY OIL CO., Limited, v. JOY et al.***

No. 14248.

Court of Appeal of Louisiana. Orleans.

April 10, 1933.

Michael M. Irwin, of New Orleans, for appellants.

Francis P. Burns, of New Orleans, for appellees.

JANVIER, Judge.

Plaintiffs, liquidators of Liberty Oil Company, seek reimbursement of certain paving charges, which they allege were paid by that company in error on property leased from defendants, and which charges, it is alleged, were owed by and should have been paid by defendants. The written lease under which the Liberty Oil Company leased from defendants was executed on February 15, 1924, for a period of ten years, commencing March 1, 1924. It placed upon the tenant, Liberty Oil Company, among other obligations, that of paying "all federal, state, parish, city, drainage and any other taxes or assessments that may be lawfully levied by any taxing authority against the property herein leased."

At the time the lease was executed there were no paving charges assessed against the property, but, about two years thereafter, Canal street, one of the streets on which the property is located, was repaved by the city of New Orleans, and, as a result, there was then recorded against the property its prorata share of the said paving cost. Later the city undertook what may be termed the Canal street beautification program, under which certain ornamental street lights and sidewalks were installed, and, as a result, further charges were recorded against the property leased.

During the years 1927, 1928, and 1929, it is alleged that Liberty Oil Company paid on account of the above referred to charges the sum of $667.72, and it is for reimbursement of this amount, which is alleged to have been paid in error, that this suit is brought. Defendants filed an exception of no cause of action, which was sustained below, and plaintiffs have appealed.

■ The contention of plaintiffs is that it was not contemplated by the parties, at the time the lease was entered into, that such special and unusual charges as those involved

*Rehearing granted May 22, 1933.

here were to be paid by the tenant, but that, by the words "any other taxes or assessments," the parties intended to include only such annual costs of government as might, through the medium of taxes, be by the taxing authorities placed upon the shoulders of the property owner, and that in the sense in which the words are used "assessments" and "taxes" are synonymous. The argument is made that paving confers a special benefit upon the property itself not limited to any particular year, nor even to the term of the lease, and that it would be inequitable to require a tenant, who occupies the property for only a limited time, to pay such charges which result in giving added value to the property long after the lease has expired.

It is not difficult to understand how defendant's interpretation of the lease, placing upon the tenant the obligation of paying paving charges, may, in certain cases, work an inequitable hardship upon the tenant, because it should be borne in mind that, as soon as the paving lien is recorded, the total amount of the charge is due and owing, and an owner whose lease contains such a clause and whose paving may have been done just before the expiration of the lease may require the tenant to pay the entire charge, although by reason of the expiration of the lease, he (the tenant) will receive little or no benefit from the improvement. It must be remembered that the whole amount of the paving charge is, as has been said, due at once and the privilege of paying in installments and with interest is accorded to the owner only if he prefers to take advantage of this deferred payment plan. But he has the right to pay it all at one time and, if the interpretation contended for here is correct, an owner could require the tenant to make full payment of the entire paving charge immediately upon recordation of the lien.

In a case involving this same question, one of the judges of the civil district court held that such special charges as these should be paid by the owners of the property and not by the tenants, and he based his view upon his conclusion that, at the time the lease was entered into, neither party had in mind any such charges, and he reasoned that, since neither party contemplated the imposition of such charges, and since such charges are by law placed upon the property itself, the owner and not the tenant should pay. See C. C. Cordill Investment Co. v. Mayer Israel & Co., Inc., No. 194766, Civil District Court, Parish of Orleans, decided June 10, 1932. We are advised that a compromise was entered into in that case and that no appeal was taken.

We find no fault with that view and we might entertain the same ourselves under the same facts. There the question arose over the first annual installment of paving charges, whereas here the tenant voluntarily paid three annual installments without protest and without calling upon the owners for reimbursement until nearly two years after the last payment, and we are of opinion that such action indicates that the officials of the tenant interpreted the referred to portion of the lease as placing upon the tenant the duty of paying those special charges. One of the best known methods of arriving at a decision as to what parties to a contract intended by ambiguous language is to ascertain how such language has been construed and acted upon by the parties themselves. In fact, our Civil Code, in article 1956, provides that:

"When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation."

We said that there may arise situations in which the interpretation contended for by defendants may place upon tenants a very unfair burden, but, even though such an interpretation may be one which, in such cases, would seem unfair, it is plainly not illegal, and courts will not undertake to write out of contracts stipulations merely because they seem to be burdensome to one of the parties, and it makes no difference whether such provision is burdensome because expressly made so by the wording of the document, or because so construed by the parties themselves.

Nor is there unanimity of opinion on the question of whether such interpretations placing the duty of paying such special assessments upon the tenant are unfair, and there is much that can be said on the other side of the question, and, in fact, much that has been said. We note the very interesting opinion rendered in an English court in Budd et al. v. Marshall, Law Reports, Common Pleas Division, vol. 5, pp. 481–492 (1879–1880). There the court discussed at length the question of whether it would be equitable to construe such a clause as placing the burden of such special charges upon the tenant. We quote from that opinion:

"Before concluding, I must say a few words with reference to an argument which has been somewhat strongly pressed upon us: It has been urged on behalf of the defendant that it would be inequitable to charge upon the tenant an expenditure, which is made for the permanent improvement of a property in which he has only a temporary interest, and that a construction, which would have that effect, should not be put upon the covenant in question, if the language will fairly admit of any other. Now, with reference to this argument, it must be borne in mind that a tenant for a term of years derives a benefit, greater or less according to the unexpired portion of his term, from any expenditure for the permanent improvement of the property, and that it would be equally inequitable to impose upon the landlord the whole burden of an expenditure, from which he can derive no

benefit during the remaining portion of his tenant's term; in the present case at least half of the defendant's term was unexpired at the time when the drainage works were executed. Again the defendant has, by the terms of the covenant which we are now considering, clearly taken upon himself, and must be presumed to have done so knowingly and willingly, some burdens which may result in a benefit to the demised premises beyond the period of his tenancy, as for instance, 'improvement rates', which under ordinary circumstances are imposed in respect of an expenditure for permanent improvements; and, inasmuch as, at the date of the lease, a Public Health Act was in force, under which burdens might have been imposed upon the plaintiffs (owners) similar to that, which they have been called upon to bear under the existing Act, it is difficult to suppose that such a burden was not in the contemplation of the parties at the time when the covenant was entered into.

"But even if the argument has force to the extent of supporting the view that expenditure of a like character should primarily be thrown upon the landlord, as it has been by the Public Health Act, I can well understand that for the purpose of obtaining what he might deem in other respects an eligible lease, an intending tenant would willingly subject himself to obligations, to which, but for his covenant he would not be made liable. Again, it is common knowledge that, generally speaking, the object of a landlord is to secure during the term a rent of certain amount, as free from all deductions as the law will permit, and to effectuate this object, the amount of the rent is fixed with reference to all the obligations which the tenant may be willing to take upon himself, and I can see nothing inequitable in holding the tenant to the terms of his bargain.

"Judgment affirmed."

But whether the interpretation which the tenant, during three years, placed upon the contract, was a fair one to it, and whether the other interpretation would have been fair to the landowners, are questions on which we need reach no final conclusion. Suffice it to say that the contract, as written, may be said to be uncertain and that the parties have themselves placed an interpretation upon it. We cannot change that interpretation.

The averment that the payments were made in error cannot save plaintiffs' case. True enough, a bona fide error of fact may give right to a refund of a payment made in reliance on such error. But here the fact that the error was made three times in three years, and that no protest was made and no demand for reimbursement until two years later, leads rather to the conclusion that such habit of making payment resulted from the belief that the payment was due. We feel, then, since plaintiffs' petition alleges that

their predecessor company made payments under a lease which may be construed as having placed the obligation to make such payments on their said predecessor, and since the construction placed thereon by their predecessor required it to make the said payments, that the petition does not set forth a cause of action.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed.

Affirmed.